**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

MARY SHUFELT,

      Plaintiff

 vs.           CASE NO. 04-CV-0716 (GTE DRH)

TOWN OF CHATHAM, NEW YORK, JASON L. SHAW,
Individually and as Town Justice of the Town of Chatham,
DORIS T. APPEL, Individually and as Town Justice of the
Town of Chatham
      Defendants

G. THOMAS EISELE, SENIOR DISTRICT JUDGE, sitting by designation[1]

**ORDER GRANTING SUMMARY JUDGMENT**

   Before the Court is Defendants' Motion for Summary Judgment, to which Plaintiff has responded. Plaintiff Mary Shufelt claims that she was terminated from her part-time job as a court clerk for the Town of Chatham, New York, because of her political affiliations in violation of the First and Fourteenth Amendments to the United States Constitution. Initially, Plaintiff also sought relief under section 75 of New York's Civil Service Law. However, Plaintiff conceded judgment as to her supplemental state law claim by her decision not to oppose

---

[1] The case was reassigned on April 27, 2006.

1

Defendants' motion for summary judgment as to such claim.[2] Accordingly, the Court need only address Plaintiff's federal cause of action for violation of the First Amendment pursuant to 42 U.S.C. § 1983.

Following a review of the parties' submissions and the entire record in this matter, the Court concludes that Plaintiff has failed to produce facts from which any reasonable jury could find in her favor on her remaining federal claim. Accordingly, the Defendants are entitled to judgment as a matter of law.

## FACTS WITHOUT MATERIAL CONTROVERSY

The following facts are undisputed and are taken from the Defendants' Rule 7.1(a)(3) Statement, Plaintiffs' response thereto, and Plaintiff's Rule 7.1(a)(3) Statement.

Plaintiff Mary Shufelt began working for the Town of Chatham as a court clerk in August 1987. Plaintiff worked in this position, either full time or part-time, until December 17, 2003, when she was terminated after she declined the Defendant's offer to retain her if she would agree to a change in her working hours.

Plaintiff was originally hired by Defendant Town Justice Doris T. Appel. Plaintiff's court clerk job duties included, but were not limited to, the following: entering data, sending criminal reports, doing criminal histories, taking in fine moneys, suspending licenses, writing letters for judges, answering phones and dealing with the public. Plaintiff worked full-time in this position from 1987 until 1998. In July 1998, Plaintiff began working part-time for the state in a position with The State of New York/Hudson River /Black River Regulating District. In October 1998,

---

[2] Plaintiff also conceded that her claim for punitive damages against the Town of Chatham should be dismissed.

Plaintiff began working full-time in her state position.  At the same time, Plaintiff changed her town court clerk position to a part-time position so that she could work full-time in her state position.  Plaintiff was permitted to work from 5:00 a.m. until 7:30 a.m. on Monday through Friday, and from 2:00 p.m. until the end of Court hours on Wednesday afternoon and evening.[3]  The Town of Chatham's court clerk's office is open to the public from 8:00 a.m. to 4:00 p.m.  Thus, Plaintiff's early morning work hours occurred while the office was closed to the public.

Court clerk Sandra LeClair was hired by the Town of Chatham in July 1998.  Ms. LeClair was hired to work full-time.  In August of 1999, a second part-time clerk, Rebecca Meuchner, was hired.  Ms. Meuchner's working hours were scheduled during hours the clerk's office was open to the public.

Court clerks in Chatham are hired and fired based upon decisions made by the Town Justices.  Town Justices also make staffing decisions, which are approved by the Town Board in the ordinary course of business.

There are two Town Justice positions for Chatham.  Defendant Doris T. Appel has served as one of two Town Justices from 1984 until the present time.  From 1987 until 1999, Richard Hallock was the second Town Justice.  In 1999,  Mr. Hallock resigned his Town Justice position in order to run for the position of Town of Chatham Town Supervisor.  At that time, Defendant Jason L. Shaw was appointed to Mr. Hallock's vacated Town Justice position.

Plaintiff often refers to former Chatham Town Justice Richard Hallock as her "father."  Although Plaintiff and Mr. Hallock are not related by blood, the two have a "father-daughter'

---

[3] On Wednesday's, Chatham's court is in session from 8:00 a.m. until it closes on Wednesday evening.  Apparently, Plaintiff's work for Chatham on Wednesdays did not interfere with her state work schedule.

relationship. Plaintiff moved into the Hallock household when she became an emancipated minor at age 16.

The parties sharply dispute the motivation for Plaintiff's termination. Plaintiff contends that she was terminated because of her support for her "father" during the November 2003 election, when Mr. Hallock ran on the Conservative Party ticket after failing to obtain the Republican nomination. Defendants contend that Plaintiff's termination had nothing to do with Plaintiff's political affiliations or job performance. Rather, Defendants contend that Chatham's court needed a part-time court clerk who was willing and able to work during normal business hours. The Court will discuss both allegations separately.

**Plaintiff's theory – Termination because of political support for Mr. Hallock**

In 2003, political infighting developed in Chatham within the Republican Party over the position of town supervisor. Richard Hallock was the incumbent, having served as the Republican Town Supervisor of Chatham from 1999 to 2003. During the Summer of 2003, a bitter campaign for the Republican nomination for Town Supervisor was waged between Mr. Hallock and Brian Weiss, the challenger. Mr. Weiss had the support of the Town Republican Chairmain, Thomas Meyn.

Defendants Jason Shaw and Doris Appel were both aware of the infighting. Plaintiff contends that on July 21, 2003, while attending a summer training session for Judges and Clerks sponsored by the State of New York, Defendant Appel made the following comment to Richard Szarowicz, Court Clerk in the Village of Blasdell, New York: "as soon as Richie is gone, she's gone." Mr. Szarowicz understood "Richie" to refer to Richard Hallock and "she" to refer to Plaintiff. Defendants dispute that Defendant Appel made the comment. For purposes of

4

summary judgment, the Court assumes the comment was made. Plaintiff never discussed Judge Appel's comment with Judge Appel, Judge Shaw or with any Town Board members.

Even though Mr. Hallock did not receive the endorsement of the Republican Committee, he entered the primary seeking the Republican nomination for Town Supervisor for the Fall 2003 election. Caucuses were held to determine which candidate would receive the Republican nomination. Mr. Hallock successfully challenged the first two caucuses on legal grounds. Consequently, three caucuses had to be held.

Mr .Weiss won the Republican primary election in September of 2003. In the November 2003 election, Mr. Hallock ran on the Conservative Party ticket against Mr. Weiss and Democrat Jesse DeGroodt. Mr. DeGroodt won the election as Town Supervisor due in part to the split within the Republican Party and Mr. Hallock's candidacy.

Defendant Shaw, a Republican, was also running for reelection in 2003. As a result of Mr. Hallock's legal challenges to the Republican caucuses, Mr. Shaw had to endure three caucuses. Judge Shaw admitted that he was upset by the process.

Defendant Appel is also a Republican. Her live-in boyfriend, Earl Kelsey, serves on the Republican committee and supported Brian Weiss as the Republican Party candidate.

Plaintiff alleges that Defendants Shaw and Appel were "strong political supporters of Republican Chairman Thomas Meyn." For purposes of this motion, the Court accepts that both individual Defendants were Republicans and that they opposed Mr. Hallock's candidacy for Town Supervisor.

**Defendant's theory – Termination because of legitimate business reasons**

During October 2003, the part-time, daytime clerk, Rebecca Meuchner, a Republican,

was terminated due to performance related issues.  There is no allegation that Ms. Meuchner's termination was improper or related in any way to Plaintiff's claims.  This vacancy left full time clerk Sandra LeClair working alone during the daytime hours.  Carol Pinkowski, who had worked for Defendant Appel many years before, worked on a temporary basis until a replacement could be found for Ms. Meuchner.  Ms. Pinkowski was not interested in working on a permanent basis.

In December 2003, Judges Appel and Shaw made the decision to reduce the staffing of Chatham's court clerks from three clerks (one full time, two part time) to two clerks (one full time, one part time).  They were influenced by the fact that the amount of work at the court clerk's office had decreased significantly due to a steady decline in the number of tickets written.  The Defendant Justices also decided that both clerks would need to work during the hours that the clerk's office was open.  Plaintiff does not dispute the decrease in the number of tickets written or its affect on lessening the workload for clerks.  Nor does she challenge the fiscal and economic basis for the reduction in force.  The assessment of the Town Justices regarding the number of clerks needed was shared by full time clerk Sandra LeClair, who opined, "things were down and I think we did not need quite as many working hours."

Plaintiff denies that the court clerk's duties had to be done while the court clerk's office was open.  Defendants strongly contend to the contrary.  They point out that many of the court clerk's duties needed to be performed during the hours the clerk's office was open, i.e., between 8 a.m. and 4 p.m.  Those duties included collecting moneys, answering the telephone and inquiries from attorneys, judges, parties to cases, the public and court personnel, as well as corresponding verbally with enforcement agencies, defense attorneys, insurance companies,

6

parties, other courts, the office of court administration, the Department of Motor Vehicles, the Probation Department, the Mental Health Department and other state and federal agencies. Ms. LeClair also agreed that the part-time court clerk needed to work during those hours the office was open to the public.

Judges Appel and Shaw decided to abolish the early morning hours Plaintiff was working, but they decided to offer her the part time position if she would agree to work during regular office hours. In making this decision, the Defendant judges were influenced by the fact that Plaintiff had been employed as a court clerk since 1987, was clearly the most experienced candidate and would not require training. On Wednesday, December 10, 2003, Judge Shaw offered the part time clerk position to the Plaintiff, advising her that she would have to work during the day when the clerk's office was open, and that the number of hours would be increased from 10 to 20 hours. Judge Shaw advised Plaintiff that he believed the early a.m. hours were not necessary whereas coverage was needed during the day. In response, Plaintiff told Judge Shaw that she could not leave her full-time position more than one day a week or change her hours and therefore could not accept the position. Judge Shaw asked Plaintiff to speak with her boss at the state and to think about it. Plaintiff never responded thereafter.

In a letter dated December 17, 2003, Judge Shaw memorialized the conversation held on December 10th. Judge Shaw further advised Plaintiff that effective January 1, 2004, Plaintiff was no longer to work from 5 a.m. to 7 a.m. and was to begin the previously proposed 20-hour week daytime schedule. Finally, in anticipation that Plaintiff would not be able to meet the requirements for the new part-time clerk position, Judge Shaw requested that Plaintiff resign effective January 1, 2004, and that she not return to work after receipt of the letter. Plaintiff had

7

accumulated sufficient vacation days such that she would be paid through the end of the year without working.

Judge Shaw's letter expanded on and further explained the reasons previously given for the decision to eliminate the early morning part-time clerk position. He described the situation with three clerks as "overstaffed." He noted that such overstaffing could not be justified in light of tightening municipal budgets, increased computerization which had decreased paperwork, and the decrease in the number of tickets over the past several years. Plaintiff has not disputed the truth of the reasons given by Judge Shaw for eliminating the early morning part-time clerk position.[4]

After receiving the December 17, 2003, letter and learning that the locks had been changed, Plaintiff complained to the Town Board. At that time, the Board was comprised of Town Supervisor Richard Hallock, Judy Skype, Brian Weiss, Kary Jablonka, and Thomas Meyn, all Republicans. The Town Board reviewed the December 17, 2003, letter written by Judge Shaw and decided to let the Judges handle the matter themselves.

Following January 1, 2004, the newly elected Board took office, which included newly elected Town Supervisor Jesse DeGroodt, newly elected counsel members Beth Ann Ripple and Jean Rhode, and returning Board members Thomas Meyn and Kary Jablonka. Mr. DeGroodt and

---

[4] Plaintiff has offered the conclusory opinion of Richard Hallock that he "did not feel there was any need to have a court clerk present" during the 9 a.m. to 4 p.m. hours. (Pl.'s 7.1(a)(3) Stmt.at ¶ 231). Mr. Hallock's opinion is not supported by personal knowledge and is not admissible evidence. Mr. Hallock last served as a Town Justice in 1999. Similarly, Mr. Hallock's testimony that Matthew Torrey, Brian Weiss, and other unidentified citizens made statements to the effect that Plaintiff would no longer have a job when he left office are inadmissable hearsay and will not be considered. Further, there is no nexus shown connecting these opinions to the decision-makers here, the Defendants Shaw and Appel.

Ms. Rhode are Democrats.  Ms. Ripple is a Republican.

A part-time daytime clerk, Anne McGowan, was hired in February 2004.   The early morning hours previously worked by Plaintiff have been eliminated completely.  Ms. McGowan works on  Wednesdays from 1:30 p.m. until the end of Court, on Mondays from 9:00 a.m. to 4 p.m., and completes the remainder of her 21 hour workweek during normal business hours on Thursdays.

## SUMMARY JUDGMENT STANDARD

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *See Giano v. Senkowski*, 54 F.3d 1050, 1052 (2nd Cir. 1995)(*citing Celotex v. Catrett*, 477 U.S. 317, 322 (1986)).  The ultimate inquiry is whether a reasonable jury could find for the nonmoving party based on the evidence presented, the legitimate inferences that could be drawn from that evidence in favor of the nonmoving party, and the applicable burden of proof.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986).  In determining a motion for summary judgment, all inferences to be drawn from the facts contained in the exhibits and depositions "must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962); *Hawkins v. Steingut,* 829 F.2d 317, 319 (2d Cir.1987).  Nevertheless, "the litigant opposing summary judgment 'may not rest upon mere conclusory allegations or denials' as a vehicle for obtaining a trial."  *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 445 (2d Cir.1980) (quoting *SEC v. Research Automation Corp.,* 585 F.2d 31, 33 (2d Cir.1978)).

**DISCUSSION**

Plaintiff alleges that she was terminated because of her support for her "father" in connection with his unsuccessful bid for the 2003 nomination as the Republican party Town Supervisor candidate and his unsuccessful candidacy as the Conservative party candidate. Where, as here, a plaintiff does not hold a policymaking job, the First Amendment prohibits the government employer from dismissing her for political reasons. *See Vezzetti v. Pellegrini*, 22 F.3d 483, 486-87 (2d Cir. 1994). To recover for her claim of political discrimination under the First Amendment, Plaintiff must show: "(1) her speech was constitutionally protected, as a result of which (2) she suffered an adverse employment decision, and (3) a causal connection between the speech and the adverse employment decision, so that it can be said that her speech was the motivating factor in the determination." *Grownowski v. Spencer*, 424 F.3d 285 (2d Cir. 2005)(citation omitted); see also *Mount Healthy School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977).

After a plaintiff has established the three prong test, "the defendant still has the opportunity to show by a preponderance of the evidence that it would have taken the same adverse employment action 'even in the absence of the protected conduct.'" *Gronowski*, 424 F.3d at 296. The Defendants have produced an abundance of evidence supporting the decision to eliminate the early part-time hours worked by Plaintiff and to staff the court clerk's office with only two clerks, both of whom would work during regular office hours. Additionally, it is uncontroverted that this situation was set in motion by the termination of part-time clerk, Ms Meuchner, in October 2003, an event completely unrelated to the political unrest involving Mr. Hallock. It was the termination of Ms. Meuchner that left the full-time clerk, Ms. LeClair,

10

without needed help during the day.  Plaintiff has not come forward with any evidence to show that Defendants' articulated reasons for the decision to cut back permanently to one part-time clerk and to require that clerk to work during hours the office was open to the public were false. While Plaintiff denies that working 5 to 7 a.m. prevented her from interacting with the public or judges while working, the denial contradicts her earlier deposition testimony.  Finally, it is a matter of common sense that a court clerk working alone when the clerk's office is closed will have less opportunity for interaction with the public, co-workers, and judges than a court clerk working all her hours when the clerk's office is open.  The Defendants have offered ample proof of legitimate business reasons for the employment decisions challenged by Plaintiff.

Most importantly, Plaintiff has brought forward no admissible evidence to controvert the Defendants' business decision.  Nor has she challenged the evidence of the decrease in the number of tickets brought forward by Defendants or the budgetary and fiscal reasons supporting the cut-back.  In sum, Plaintiff has failed to come forward with any evidence from which the jury could find that the Defendants' explanation for its business decision was false or a pretext to get rid of Plaintiff.

Plaintiff asserts that she can still prevail based on the following two sources of evidence: "(1) the statement made by Judge Doris Appel to a non party witness; and (2) the overall political controversy within the Republican Party which existed during the 2003 election in the Town of Chatham."[5]

While Judge Appel denies making the comment to Richard Szarawicz (a court clerk from another town) that "as soon as Richie's gone, she's gone,"  the Court must assume that this

---

[5] Plaintiff's Memorandum of Law, Docket No. 27, at p. 6.

comment was made. Mr. Szarowicz admitted that the did not know whether Judge Appel meant by her comment that Plaintiff might elect to quit if her "father" Richard Hallock was no longer in office.[6] Thus, Judge Appel's comment, if made, would not necessarily imply that she intended to take action to get Plaintiff out of office. However, for purposes of summary judgment, the Court must view this statement in a light most favorable to the Plaintiff. Defendants point out that Judge Appel's comment occurred on July 21, 2003, several months prior to the election dispute that erupted over the three Republican primaries and the employment decision made in December of 2003. Still, the Court assumes for purposes of this motion that the five-month gap between Judge Appel's comment and Plaintiff's loss of her part-time court clerk position is sufficient to raise at least an inference of retaliation. *See, e.g.*, *Bernhardt v. Interbank of New York*, 18 F.Supp.2d 218, 226 (E.D.N.Y. 1998)(finding eleven-month gap between protected activity and termination sufficient to raise inference of retaliation).

Finally, the Court appreciates the extent of the infighting that was occurring during the latter half of 2003. Plaintiff has outlined in considerable detail the nature of the political alignments and why her father's conduct upset the Republican power base, which the Court assumes included both Defendants Appel and Shaw. However, there is no allegation that Plaintiff was involved in any specific manner in the dispute. In other words, there is no allegation that Plaintiff spoke out or took action on Mr. Hallock's behalf. Rather, Plaintiff assumes that because she was a known supporter of Mr. Hallock that she began to be viewed with disfavor solely because of such status. The Court accepts that this is so for purposes of the

---

[6] It appears that until he lost the 2003 election, Mr. Hallock was in office either as a Town Justice or Town Supervisor practically the entire tenure of Plaintiff's employment as court clerk.

present motion.

In a further effort to buttress her claim of political discrimination, Plaintiff points to the fact that Matthew Torrey, the Town of Chatham's dog catcher, was not re-appointed in January 2004.  Mr. Torrey was the Chairman of the Conservative Party.  Defendants have produced evidence to show that the failure to reappoint Mr. Torrey was the result of performance-related issues, specifically, his failure to respond to a series of calls about a problem dog.  Plaintiff has not controverted the performance-based reasons for Mr. Torrey's discharge.  Nor has she presented any admissible evidence, such as an affidavit from Mr. Torrey, or anyone else with knowledge, to contest this assertion.

While the issue is debatable, the Court will assume for purposes of this motion (based in large part on the comment attributed to Judge Appel) that Defendants had an improper motive, that is, that they were motivated in part by Plaintiff's support of Mr. Hallock.[7]  Nevertheless, proof of an improper motive alone is insufficient to establish a constitutional violation.  To prevail, Plaintiff must also prove causation.  Conversely, Defendants are entitled to prevail by showing that they would have taken the same action in the absence of the protected conduct.  The Supreme Court underscored this point in *Mt. Healthy*, *supra*, when it stated:

> A rule of causation which focuses solely on whether protected conduct played a part, "substantial" or otherwise, in a decision not to rehire [or to terminate] could place an employee in a better position as a result of the exercise of constitutionally protected conduct than he would have occupied had he done nothing. . . . The

---

[7] The Court finds that Plaintiff has sustained her burden to prove a *prima facie* case with considerable reservation.  The fact that these events were set in motion by an unrelated termination of the 3rd court clerk and that Defendants offered Plaintiff the opportunity to retain her part-time position seriously undercuts Plaintiff's allegation that she was forced out of the position due to her political support for her father.

13

>> constitutional principle at stake is sufficiently vindicated if such an employee is placed in no worse a position than if he had not engaged in the [constitutionally protected] conduct.

*Mt. Healthy*, 429 U.S. at 285-86.

Plaintiff acknowledges that Defendants are entitled to an affirmative defense if it can show that it would have taken the same action for a permissible reason. *See McEvoy v. Spencer*, 124 F.3d 92, 100 (2d Cir. 1997). However, Plaintiff asserts that Defendants have failed to carry their burden with regard to the defense. The Court disagrees.

To accept Plaintiff's argument would grant her more protection than she would otherwise by entitled to solely by the circumstance of her political support of Mr. Hallock. On this particular record, Plaintiff cannot prevail without casting doubt on the validity of the reasons given by Defendants for the decision to permanently reduce the court clerk staffing to two positions, one full time and one part time, and to require the part time clerk to work during normal business hours. The budgetary and economic reasons and the staffing needs asserted by Defendants are legitimate employer concerns. Those concerns are essentially unchallenged by Plaintiff. Plaintiff offers only her self-serving opinions and conclusions (and those of her father, Mr. Hallock). For example, Plaintiff spoke to the town board in executive session and "explained that she did not think it was fair because she had worked early hours for many years and now the judges suddenly wanted to change her work hours."[8] Plaintiff clearly felt that her long tenure on the job entitled her to keep working the same hours. The First Amendment, however, does not protect public employees from unfair employer conduct or from changing economic conditions or employer needs. Nor does it entitle public employees to continued

---

[8] (Pl.'s Rule 7.1(a)(3) Statement, at ¶ 215).

employment on the same terms and conditions.

Plaintiff has simply failed to create a factual dispute for the jury regarding whether she would have been permitted to keep working her early morning hours but for her political support for Mr. Hallock.

## CONCLUSION

For the reasons herein stated,

IT IS HEREBY ORDERED THAT Defendants' Motion for Summary Judgment (Docket No. 23) be, and it is hereby, GRANTED.  Plaintiff Mary Shufelt's Complaint is hereby DISMISSED WITH PREJUDICE.

IT IS SO ORDERED this  24th  day of May, 2007.

                                        /s/Garnett Thomas Eisele
                                       UNITED STATES DISTRICT JUDGE